## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                         )
**GREGORY SLATE,**                       )
                                         )
      **Plaintiff,**            )
                                         )
    **v.**                        )    **Civil Action No. 14-1116 (RMC)**
                                         )
**DISTRICT OF COLUMBIA,** *et al*.,      )
                                         )
      **Defendants.**          )
_____         )


## MEMORANDUM OPINION
**Regarding Medical Faculty Associates' Motion to Dismiss [Dkt. 24]; Federal Defendants'
Motion to Dismiss [Dkt. 25]; Howard University Hospital's Motion to Dismiss [Dkt. 29]**

      On April 10, 2014, Plaintiff Gregory Slate filed a 333-paragraph Complaint in the

Superior Court of the District of Columbia, alleging twenty-two different claims against more

than twenty defendants.  The case was removed to this Court, and Mr. Slate filed a 441-

paragraph Amended Complaint on October 1, 2014, alleging twenty-eight claims against more

than twenty-three Defendants.[1]  Most of the Defendants have some relationship, however

tangential, to Mr. Slate's encounters with officers of the D.C. Metropolitan Police Department

when he was documenting and filming alleged police harassment.  Among other claims, Mr.

Slate alleges illegal arrests by MPD officers, warrantless searches of his property, destruction of

his film tapes, false arrest, malicious prosecution, and wrongful incarceration.

      Medical Faculty Associates, Inc. and Howard University Hospital move to

dismiss for failure to state a claim.  In addition, the United States moves to dismiss for lack of

jurisdiction based on sovereign immunity.  As explained below, these motions will be granted.

---

[1] An exact count of the Defendants is not possible, as they include various unidentified police
officers, correctional officers, and deputy marshals.

# I. FACTS

Mr. Slate asserts that he is "an Emmy award winning investigative journalist whose work focuses on police misconduct and corruption." Am. Compl. [Dkt. 22] ¶ 1.[2] He claims that he filmed police harassment on October 26 and 28, 201, *id.* ¶¶ 23-27, and since that time, he has been subject to numerous instances of police harassment.[3] *See e.g., id.* ¶¶ 28-30, 34-40, 45-60.

Mr. Slate alleges that on December 10, 2011,[4] Mr. Slate called 911 to report a disturbance at the property he leases in the 1700 block of Kilbourne Place NW, Washington D.C. *Id.* ¶ 32. MPD officers allegedly forced their way into his residence and, without a warrant, searched the first floor and Mr. Slate's office on the third floor. *Id.* ¶¶ 34-39. MPD Officer James Boteler, a named Defendant, then arrested Mr. Slate for felony assault with a deadly weapon and unlawful possession of ammunition, which Mr. Slate alleges are bogus charges. *Id.* ¶ 40. When told he would be arrested, Mr. Slate suffered a severe panic attack and was

---

[2] Mr. Slate filed the original complaint in Superior Court for the District of Columbia on April 10, 2014. The case was removed to this Court. He filed the Amended Complaint on October 1, 2014. Because Mr. Slate filed the Amended Complaint without first obtaining leave of Court as required by Federal Rule of Civil Procedure 15(a), Medical Faculty Associates moved to strike it. *See* Mot. to Dismiss or Strike [Dkt. 24]. In light of the fact that Mr. Slate has provided good cause for amendment, *see* Opp'n [Dkt. 11] ¶ 4, the Court will allow the Amended Complaint and deny the motion to strike. As a result, motions to dismiss the original Complaint filed by Medical Faculty Associates, Howard University Hospital and the District of Columbia, *see* Dkts. 4, 18, 20, will be denied without prejudice. The Defendants already refiled each of these motions to dismiss as to the Amended Complaint, *see* Dkts. 24, 25, 31, and the first two of these are addressed in this Opinion.

[3] The details of Mr. Slate's alleged mistreatment by D.C. Metropolitan Police Department (MPD) officers and D.C. Department of Corrections officials are not relevant to the pending motions and will not be detailed here, except as necessary.

[4] Paragraph 32 of the Amended Complaint erroneously states that this event occurred on December 10, 2013. The Amended Complaint recounts events chronologically and subsequent paragraphs make it clear that the date in paragraph 32 should read "December 10, 2012."

transported to George Washington University Hospital (GW Hospital) for treatment.  *Id*. ¶ 41.

Treatment was provided by one or more physicians associated with Medical Faculty Associates,

also known as the George Washington Medical Faculty Associates.  Mr. Slate told GW Hospital

that he did not want treatment because he was uninsured, and the hospital allegedly told him that

the District of Columbia would pay for his treatment because he was in custody.  *Id*. ¶ 42.

Unidentified MPD officers then forced Mr. Slate to sign forms without letting him read what he

was signing.  *Id*. ¶ 43.  Subsequently, Mr. Slate was billed by Medical Faculty Associates for

physician services he received from the doctor(s) who cared for him at GW Hospital.  Mr. Slate

was held in D.C. Jail for one night and released on personal recognizance.  *Id.* ¶ 44.

   Six days later, on December 16, 2011, D.C. Metropolitan Police (MPD) officers

executed a search warrant of Mr. Slate's property on Kilbourne Place N.W.  *Id*. ¶ 47.  The

officers allegedly forced entry, destroyed personal property, and falsely charged him with

possession of methamphetamines.  *Id*. ¶¶ 47-60.  Upon hearing that he would be charged, Mr.

Slate suffered a severe panic attack; he was transported to Howard University Hospital.  *Id*. ¶ 61.

Mr. Slate told Howard University Hospital that he did not want treatment because he was

uninsured, and like GW Hospital, Howard University Hospital allegedly told Mr. Slate that

because he was in police custody, the District of Columbia would pay for his treatment.  *Id*. ¶ 62.

After receiving treatment, unidentified MPD officers forced Mr. Slate to sign various forms,

which had not been filled out; they did not allow Mr. Slate to read what he was signing.  *Id.* ¶ 63.

Mr. Slate was held in custody and released seven days later on personal recognizance.  *Id*. ¶ 66.

   On January 4, 2012, MPD Officer John Carruthers, a named Defendant, together

with unidentified MPD officers and unidentified U.S. Marshal Service deputies, allegedly kicked

down the door of property Mr. Slate leases at 35 Bryant Street, N.W. and entered without a

warrant. *Id*. ¶ 69.  Mr. Slate alleges further:

> 70. While inside 35 Bryant Street, NW an unidentified USMS
> Marshal told Plaintiff's tenant that Plaintiff was engaged in
> financial fraud and to close the bank account from which Plaintiff
> deducted the tenant's rent.
>
> 71. Plaintiff has never engaged in or been charged with financial
> fraud and as a result of Defendant Unnamed Marshal's and MPD
> officer's knowing misrepresentation Plaintiff's tenants at 35
> Bryant Street NW stopped paying rent and moved out causing
> Plaintiff to lose the rental income he would have otherwise earned
> but for the Marshal's representation.

*Id*. ¶¶ 70-71.  The officers arrested Mr. Slate on two counts of felony contempt of court.  *Id*. ¶ 72.

Mr. Slate had another severe panic attack.  *Id*. ¶ 72.  This time he was transported to Washington

Hospital Center, also known as MedStar Washington Hospital Center.  As he had on prior

occasions, Mr. Slate told the hospital that he did not want treatment because he was uninsured;

the hospital assured him that the District of Columbia would pay for his treatment because he

was in police custody; and unidentified MPD officers forced Mr. Slate to sign various forms,

without permitting him to read the forms.  *Id*. ¶¶ 73-74.  Mr. Slate remained in MPD custody.

The next day, January 5, MPD transported Mr. Slate to Howard University

Hospital due to high blood pressure.  *Id*. ¶ 76.  Mr. Slate asked the hospital to bill the MPD since

he was in custody, and the hospital agreed to do so.  *Id*. ¶ 77.  As before, unidentified MPD

officers forced Mr. Slate to sign various forms, without permitting him to read the forms.  *Id*.

¶ 78.  Mr. Slate was returned to MPD custody.  A bail hearing was held on January 17, 2012, and

named Defendant Assistant U.S. Attorney Jin Park served as the prosecutor.  *Id*. ¶ 80.  Mr. Slate

alleges that during an interview of a potential witness at the bail hearing, AUSA Park told the

witness that Mr. Slate had done "very very bad things."  *Id*.

Mr. Slate was denied bail and was held in the D.C. Department of Corrections (DOC) for the next four months. *Id.* ¶ 79. Mr. Slate complains that conditions at DOC were "inhumane" and he claims that he was subjected to repeated strip searches, violence, and sexual assaults by DOC officers. *Id.* ¶¶ 81-206.

A trial jury acquitted Mr. Slate on all firearms-related charges and both counts of contempt of court on April 23, 2013. *Id.* ¶¶ 207. Previously, the Superior Court had dismissed all the drug charges against Mr. Slate. *Id.* ¶ 208.

When he was released in April 2013, Mr. Slate discovered that the District of Columbia had not paid his medical bills and that GW Hospital, Howard University Hospital, and Washington Hospital Center demanded that he pay their invoices. *Id*. ¶ 213 ("When he was released from incarceration Plaintiff learned that the District of Columbia has not (sic) paid for any of the medical treatment Plaintiff received while in custody and that Defendants George Washington University Hospital, Howard University Hospital, and Washington Hospital Center were demanding several thousand dollars in payment."). Mr. Slate attempted to obtain credit but was denied because these hospitals, as well as Medical Faculty Associates, had placed delinquency notices on his credit report. *Id.* ¶¶ 215-216.

As relevant to the motions addressed in this Opinion, the Amended Complaint alleges the following claims:

> Count XII alleges that unidentified U.S. Marshal Service deputies violated Mr. Slate's Fourth Amendment rights by searching his home without a warrant on January 4, 2012, *see* Am. Compl. ¶¶ 290-293;[5]
>
> Count XIV alleges that an unidentified U.S. Marshal Service deputy tortiously interfered with Mr. Slate's contract with his

---

[5] Count XII and Count XV also charge MPD Officer Carruthers and unidentified MPD officers with violating the Fourth Amendment and with trespass.

tenant(s) by falsely telling tenant(s) that Mr. Slate was engaged in financial fraud causing them to stop paying rent and move out, *see id.* ¶¶ 304-314;

Count XV alleges that unidentified U.S. Marshal Service deputies committed trespass when they entered 35 Bryant Street N.W., *see id.* ¶¶ 315-318;

Count XIX alleges that AUSA Park committed libel by stating that Mr. Slate did "very very bad things," *see id.* ¶¶ 340-49;

Count XXI alleges that Medical Faculty Associates violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692 *et seq.* by filing delinquent credit ratings and by pursuing Mr. Slate for a debt that was not owed to Medical Faculty Associates, *see id.* ¶¶ 358-364; and

Count XXII alleges that Howard University Hospital similarly violated the FDCPA by filing delinquent credit ratings and by pursuing Mr. Slate for a debt that was not owed to Howard University Hospital, *see id.* ¶¶ 365-373.

The Attorney General has certified that AUSA Park and the unidentified United States Marshals Service employees (collectively, the Federal Defendants) were acting within the scope of their federal employment at the time of the alleged incidents. *See* Am. Certification [Dkt. 25-1]. As a result, the United States was substituted as Defendant for the Federal Defendants under 28 U.S.C. § 2679(d)(1), which provides "[u]pon certification by the Attorney General, . . . [the] civil action . . . shall be deemed an action against the United States . . . and the United States shall be substituted as the party defendant."

Federal Defendants seek dismissal of all claims against them in their official capacities[6] because the Court lacks jurisdiction over such claims under Federal Rule of Civil

---

[6] The initial Complaint sued all Federal Defendants in their official capacities only. *See* Compl. [Dkt. 1]. The Amended Complaint names the individual defendants in their official and personal capacities. There is no record that the Amended Complaint has been served on these putative defendants in their personal capacities. The Federal Defendants' motion neither addresses, nor does the Court decide, any such personal capacity claims.

Procedure 12(b)(1) due to sovereign immunity.  Medical Faculty Associates and Howard

University Hospital move to dismiss for failure to state a claim pursuant to Federal Rule of Civil

Procedure 12(b)(6).

## II.  LEGAL STANDARDS

### A.  Failure to State a Claim

Complaints filed by *pro se* litigants are held to less stringent standards than

formal pleadings drafted by lawyers, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), but even

*pro se* litigants must comply with the Federal Rules of Civil Procedure, *Jarrell v. Tisch*, 656 F.

Supp. 237, 239 (D.D.C. 1987).  The Rule 12(b)(6) motions to dismiss filed by Medical Faculty

Associates and Howard University Hospital challenge the adequacy of the Amended Complaint

on its face.

A complaint must be sufficient "to give a defendant fair notice of what the . . .

claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007) (internal citations omitted).  Although a complaint does not need detailed factual

allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do."  *Id.*  A court must treat the complaint's factual allegations as true, "even if doubtful

in fact," *id.*, but a court need not accept as true legal conclusions set forth in a complaint, *see*

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  To survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, to state a claim for relief that is "plausible on

its face."  *Twombly*, 550 U.S. at 570.  A complaint must allege sufficient facts that would allow

the court "to draw the reasonable inference that the defendant is liable for the misconduct

alleged."  *Iqbal*, 556 U.S. at 678-79.  In deciding a motion under Rule 12(b)(6), a court may

consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

### B.  Lack of Jurisdiction

The United States, on behalf of the Federal Defendants in their official capacities, moves to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) due to sovereign immunity.  Pursuant to Federal Rule of Civil Procedure 8(a)(1), a plaintiff must plead grounds for the court's jurisdiction.  When reviewing a motion to dismiss for lack of jurisdiction under Rule 12(b)(1), a court must review the complaint liberally, granting the plaintiff the benefit of all inferences that can be derived from the facts alleged. *Barr v. Clinton*, 370 F. 3d 1196, 1199 (D.C. Cir. 2004).  Nevertheless, "the court need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions." *Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006).   To determine whether it has jurisdiction over the claim, a court may consider materials outside the pleadings. *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005).  No action of the parties can confer subject matter jurisdiction on a federal court because subject matter jurisdiction is an Article III and a statutory requirement. *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003).  The party claiming subject matter jurisdiction, here Mr. Slate, bears the burden of demonstrating that jurisdiction exists. *Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008).

### III.  ANALYSIS

#### A.  Howard University Hospital

Count XXII of the Amended Complaint alleges that Howard University Hospital violated the FDCPA.  *See* Am. Compl. ¶¶ 365-373.  Howard University Hospital moves to dismiss because it did not act as a "debt collector" when it attempted to collect its *own* debt.  *See* Howard Univ. Mot. to Dismiss [Dkt. 29].  FDCPA defines a "debt collector" to be "any person who uses . . . the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  In other words, the FDCPA applies to those who collect debts owed to another.  "The FDCPA is not applicable to creditors who are in the business of collecting their own debts."  *Mazza v. Verizon Washington D.C., Inc.*, 872 F. Supp. 2d. 28, 37 (D.D.C. 2012); *see also Gould v. ClaimAssist*, 876 F. Supp. 2d 1018, 1022 (S.D. Ill. 2012) (a debt collector is someone who collects debts for another).

Mr. Slate failed to file a response to Howard University Hospital's motion to dismiss.  Local Civil Rule 7(b) requires an opposing party to file an opposition brief within fourteen days or by such other date set by the court.  Howard University Hospital filed its motion to dismiss on October 22, 2014.  The Court issued an Order requiring Mr. Slate to file an opposition no later than November 24, 2014, and indicating that he would risk dismissal if he failed to file a response.  *See* Order [Dkt. 30].  When an opposing party fails to timely respond to a motion to dismiss, the Court may treat the motion as conceded.  *See Fed. Deposit Ins. Corp. v. Bender*, 127 F.3d 58, 68 (D.C. Cir. 1997).  Because Mr. Slate has not opposed the motion to dismiss filed by Howard University Hospital, the Court treats the motion as conceded; the motion to dismiss will be granted and Count XXII will be dismissed.

**B.  Medical Faculty Associates' Motion to Dismiss**

Mr. Slate also asserts an FDCPA claim against Medical Faculty Associates.  *See* Am. Compl. ¶¶ 358-364 (Count XXI).  Medical Faculty Associates moves to dismiss for failure to state a claim.  *See* Medical Faculty Mot. to Dismiss [Dkt. 24].

Count XXI fails to state a claim because it fails to provide any factual support for the claim that Medical Faculty Associates is a "debt collector" covered by the FDCPA.  *See Mazza*, 872 F. Supp. 2d. at 37 (FDCPA does not apply to creditors who collect their own debts; FDCPA applies only to debt collectors who collect debts owed to another).  The Amended Complaint makes very little mention of Medical Faculty Associates.  It misidentifies it as a hospital, *see* Am. Compl. at 5, when Medical Faculty Associates in fact is a non-profit physician practice corporation.  The Amended Complaint alleges that "in the course of attempting to obtain credit Plaintiff was advised that Defendants George Washington University Hospital, *Medical Faculty Associates*, Howard University Hospital, and Washington Hospital Center had placed a delinquent credit rating in her [sic] credit report."  *See id*. ¶ 215 (emphasis added).  The Amended Complaint then alleges in conclusory fashion that Medical Faculty Associates is both a creditor and a debt collector and that it violated FDCPA by filing delinquent credit ratings and by pursuing Mr. Slate for a debt that was not owed to Medical Faculty Associates.  *See id*. ¶¶ 358-364.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is "plausible on its face," *Twombly*, 550 U.S. at 570.  The Court need not accept as true the asserted bald legal conclusion that Medical Faculty Associates is a "debt collector" as defined by the FDCPA.  *See Iqbal*, 556 U.S. at 678.

In response to the motion to dismiss, Mr. Slate makes a new allegation, this time claiming that Medical Faculty Associates acted as a debt collector for "George Washington Hospital Center."[7]  Opp'n [Dkt. 34] at 2.  Mr. Slate offers no facts whatsoever to support this latest assertion.  This allegation is not "plausible on its face."  *See Twombly*, 550 U.S. at 570. There is no entity called "George Washington Hospital Center,"[8] and Mr. Slate provides no support for his claim that Medical Faculty Associates, a group of physicians whose business is to provide health care, sought to collect debts from him that are owed to another entity.

Because Mr. Slate has failed to assert plausible factual allegations in support of his claim, the motion to dismiss filed by Medical Faculty Associates will be granted and Count XXI will be dismissed.

### C.  Federal Defendants

Mr. Slate has sued unidentified U.S. Marshal Service deputies for violating the Fourth Amendment (Count XII), tortious interference with contract (Count XIV), and trespass (Count XV).  He sues AUSA Park for libel (Count XIX).  The United States is substituted for these defendants insofar as Mr. Slate sues them in their official capacity.

Suit against the United States is barred by the doctrine of sovereign immunity unless Congress has specifically waived such immunity.  *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994).  Congress has not waived sovereign immunity for constitutional claims. *See Clark v. Library of Cong.*, 750 F.2d 89, 103-05 (D.C.Cir.1984) (constitutional claims solely

---

[7] Further, "[i]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss."  *Arbitraje Casa de Cambio, S.A. de C.V. v. United States Postal Serv.,* 297 F. Supp. 2d 165, 170 (D.D.C. 2003) (quoting *Coleman v. Pension Benefit Guar. Corp.,* 94 F. Supp. 2d 18, 24 n. 8 (D.D.C. 2000)).  Thus, the Court does not treat this allegation as part of the Amended Complaint.

[8] Mr. Slate might be referring to George Washington University Hospital or Washington Hospital Center, also known as MedStar Washington Hospital Center.

for monetary damages against federal official in his official capacity are barred by sovereign immunity).

As to tort claims, Congress has waived sovereign immunity in a limited way via the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b)(1), 2675, 2679-80.  The FTCA allows suits for money damages against the United States for claims against federal employees that allege "negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment."  28 U.S.C. § 1346(b).  The FTCA expressly excludes certain claims from its coverage; in particular, § 2680(h) expressly retains sovereign immunity from suit on "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights."  *See also Art Metal-U.S.A., Inc. v. United States*, 753 F.2d 1151, 1154-55 (D.C. Cir. 1985) (FTCA does not waive immunity from claims of tortious interference with contract); *Simpkins v. District of Columbia*, 108 F.3d 366, 371 (D.C. Cir. 1997) (FTCA does not waive immunity from claims of libel).

While a claim for trespass might be brought under the FTCA, a plaintiff must exhaust administrative remedies before bringing an FTCA claim to federal court.  *McNeil v. United States*, 508 U.S. 106, 113 (1993); *see also* 28 U.S.C. § 2675(a).  The exhaustion requirement is jurisdictional.  *GAF Corp. v. United States*, 818 F.2d 901, 904 (D.C. Cir. 1987). In other words, unless a plaintiff has followed the administrative process to its conclusion, the Court cannot entertain his lawsuit.  To exhaust administrative remedies, a plaintiff must have presented the agency with "(1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation and (2) a sum-certain damages claim," and the agency

must have either denied the claim in writing or failed to provide a final disposition within six months of the filing of the claim. *Id.* at 905. A plaintiff's failure to exhaust cannot be remedied by amending a premature complaint at a later date, after the requirements have been satisfied. *McNeil v. United States*, 508 U.S. 106, 112 (1993); *Edwards v. District of Columbia*, 616 F. Supp. 2d 112, 117 (D.D.C. 2009).

A plaintiff must plead grounds for the Court's jurisdiction, *see* Fed. R. Civ. P. 8(a)(1), and thus in an FTCA case a plaintiff must plead administrative exhaustion. *Colbert v. U.S. Postal Serv.*, 831 F. Supp. 2d 240, 243 (D.D.C. 2011). Mr. Slate has failed to allege that he exhausted administrative remedies, and thus he has failed to allege jurisdiction over his trespass claim, Count XV.

Sovereign immunity bars Counts XII (Fourth Amendment violation), XIV (tortious interference), and XIX (libel) as against the unidentified U.S. Marshal Service deputies and AUSA Park in their official capacities. Further, Mr. Slate has not alleged exhaustion of administrative remedies regarding Count XV (trespass). Accordingly, the Court lacks subject matter jurisdiction over all claims against the Federal Defendants in their official capacities and those claims will be dismissed.

## IV.  CONCLUSION

For the reasons stated above, Medical Faculty Associates' motion to strike [Dkt. 24] will be denied, the Court will grant leave to file the Amended Complaint [Dkt. 22] *nunc pro tunc* to its filing date, October 1, 2014. As a result, the following motions to dismiss the original Complaint will be denied without prejudice:  Medical Faculty Associates motion to dismiss [Dkt. 4]; Federal Defendants' motion to dismiss [Dkt. 18]; and District of Columbia's motion to dismiss [Dkt. 20]. Further, the following motions to dismiss the Amended Complaint will be

13

granted:  Howard University Hospital's motion to dismiss [Dkt. 29]; Medical Faculty

Associates' motion to dismiss [Dkt. 24]; and Federal Defendants' motion to dismiss [Dkt. 25].

As a result, Counts XXI and XXII of the Amended Complaint will be dismissed and the

following defendants will be dismissed as parties to this suit:  Howard University Hospital;

Medical Faculty Associates, Inc.; and the United States.  Assistant U.S. Attorney Jin A. Park and

unidentified John Doe U.S. Marshal Service employees are dismissed as parties in their official

capacities.  A memorializing Order accompanies this Memorandum Opinion.


Date: February 10, 2015                                   _____/s/_____
                                                          ROSEMARY M. COLLYER
                                                          United States District Judge